J-S21016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONNIE RUDOLPH | |
| Appellant | No. 672 EDA 2014 |

Appeal from the Judgment of Sentence February 20, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005455-2011

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 27, 2015**

Donnie Rudolph ("Appellant") appeals the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his conviction for possession of a controlled substance with intent to deliver,[1] and conspiracy to deliver a controlled substance.[2]  We affirm.

The trial court set forth the procedural posture of this matter as follows:

> On December 9, 2013, in a jury trial [], [Appellant] was tried *in absentia* and found guilty of [p]ossession with [i]ntent to [d]eliver a [c]ontrolled [s]ubstance, crack cocaine, and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 903.

[c]riminal [c]onspiracy to [d]eliver [c]rack [c]ocaine. On February 4, 2014, this [c]ourt sentenced the Appellant to forty-two (42) to one-hundred and twenty (120) months of incarceration for [p]ossession with [i]ntent to [d]eliver a controlled substance and a consecutive thirty-three (33) to ninety (90) months of incarceration for [c]onspiracy to [d]eliver a controlled substance. The Appellant was also sentenced to a consecutive three (3) to six (6) months of incarceration for contempt of court for failing to appear for trial. In total, this [c]ourt sentenced Appellant to seventy-eight (78) to two-hundred and sixteen (216) months of incarceration.

On February 7, 2014, [trial counsel] filed a Motion for Reconsideration of Sentence on behalf of Appellant, which this [c]ourt denied on February 20, 2014. On February 25, 2014, [trial counsel] filed a timely Notice of Appeal. On March 4, 2014, this [c]ourt ordered the Appellant to file a Statement of Errors Complained [of] on Appeal pursuant to Pa.R.A.P. 1925(b) within twenty-one (21) days. [Trial counsel] subsequently withdrew from representation of the Appellant. On April 4, 2011, this [c]ourt appointed [appellate counsel] to represent the Appellant for his appeal. On May 16, 2014, [appellate counsel], on behalf of the Appellant, filed a Statement of Errors Complained of on Appeal[.]

Trial Court Pa.R.A.P. 1925(a) Opinion, field October 21, 2014, pp. 1-2

(footnote omitted).

Appellant raises the following issues for our review:

I. Is the [A]ppellant entitled to a new sentenc[ing] hearing because the sentence imposed by the trial court of 6 years, 3 months to 17 years, 5 months in prison is unreasonable?

II. Did the trial court err in trying the [A]ppellant *in absentia* because the Commonwealth did not prove by a preponderance of the evidence that [Appellant] willfully, voluntarily and without ca[u]se absented himself from the trial?

III. Was the evidence insufficient to find the [A]ppellant guilty of [p]ossession of a controlled substance with intent to deliver because at most the evidence showed that the [A]ppellant was a purchaser of illegal drugs not a seller of illegal drugs?

IV. Was the evidence insufficient to find the [A]ppellant guilty of [c]onspiracy to distribute drugs because at most the evidence showed that the [A]ppellant was a purchaser of illegal drugs, but did not enter into an agreement to distribute or sell illegal drugs?

Appellant's Brief, p. 2.

Regarding Appellant's discretionary aspects of sentencing claim, we observe:

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. ...[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

***Commonwealth v. Moury***, 992 A.2d 162, 169-70 (Pa.Super.2010) (internal citations omitted).

Further, we note that "[c]hallenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." ***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Allen*, 24 A.3d at 1064.

Here, Appellant filed a timely notice of appeal, and preserved his issues in a post-sentence motion. Further, Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief, p. 3. Further, Appellant has raised a substantial question for our review. *See Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa.Super.2002) (holding a "claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges presents a 'substantial question' for the Superior Court's review."). Thus, we can properly address Appellant's sentencing claim on appeal.[3]

---

[3] We acknowledge and appreciate the Commonwealth's argument that Appellant submitted a deficient Pa.R.A.P. 2119(f) statement. *See* Commonwealth's Brief, pp. 7-8. However, since the 2119(f) statement succeeds in articulating the substantial question of whether the trial court sentenced in the aggravated range without providing adequate reasons therefor, we will review the claim despite the deficiencies noted by the Commonwealth.

We review discretionary aspects of sentence claims under the following standard of review:

> If this Court grants appeal and reviews the sentence, the standard of review is well-settled: sentencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Malovich*, 903 A.2d 1247, 1252-53 (Pa.Super.2006) (citations omitted).

This Court reviews a trial court's determination to proceed with a trial *in absentia* for an abuse of discretion. *Commonwealth v. Wilson*, 712 A.2d 735, 738 (Pa.1998). An appellant who claims the trial court improperly tried him *in absentia* bears the burden of establishing that his absence was with cause. *Commonwealth v. Johnson*, 764 A.2d 1094, 1097 (Pa.Super.2000).

Additionally, when examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined

circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Chris R. Wogan, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses the pertinent law and facts, and properly disposes of the questions presented. (*See* Trial Court Opinion, dated October 21, 2014, at 2-5, 7-21) (finding: (1) the court properly tried Appellant *in absentia* where Appellant was a fugitive for 22 months and failed to give any credible reason for failing to appear in court; (2) the evidence was sufficient to convict Appellant of possession of a controlled substance with intent to deliver and conspiracy to deliver a controlled substance where the evidence illustrated police observed Appellant and a co-defendant working together to conduct hand-to-hand drug sales on a street corner; and (3) the court properly deviated from the sentencing guidelines and imposed consecutive sentences on Appellant after reviewing the presentence investigation report, examining the aggravating factors

involved, and considering Appellant's age, family history, and rehabilitative needs). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2015

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA        :

                                    :    CP-51-CR-0005455-2011

CP-51-CR-0005455-2011 Comm. v. Rudolph, Donnie
Opinion

7213236751

v                                        SUPERIOR COURT
                                         672 EDA 2014
DONNIE RUDOLPH                      :

                                    :

O P I N I O N          **FILED**

CHRIS R. WOGAN, J.                          OCT 2 1 2014

                                         Criminal Appeals Unit
Procedural Posture    First Judicial District of PA

On December 9, 2013, in a jury trial before The Honorable

Chris R. Wogan, the Appellant, Donnie Rudolph, was tried *in*

*absentia* and found guilty of Possession with Intent to Deliver a

Controlled Substance, crack cocaine, and Criminal Conspiracy to

Deliver Crack Cocaine.[1] On February 4, 2014, this Court sentenced

the Appellant to forty-two (42) to one-hundred and twenty (120)

months of incarceration for Possession with Intent to Deliver a

controlled substance and a consecutive thirty-three (33) to

ninety (90) months of incarceration for Conspiracy to Deliver a

controlled substance. The Appellant was also sentenced to a

consecutive three (3) to six (6) months of incarceration for

contempt of court for failing to appear for trial. In total,

_____

[1] The defendant was represented by Dolores Bojazi, Esq. at trial.

1

this Court sentenced the Appellant to seventy-eight (78) to two-hundred and sixteen (216) months of incarceration.

On February 7, 2014 Ms. Bojazi filed a Motion for Reconsideration of Sentence on behalf of the Appellant, which this Court denied on February 20, 2014. On February 25, 2014, Ms. Bojazi filed a timely Notice of Appeal. On March 4, 2014, this Court ordered the Appellant to file a Statement of Errors Complained on Appeal pursuant to Pa. R.A.P. 1925(b) within twenty-one (21) days. Ms. Bojazi subsequently withdrew from representation of the Appellant. On April 4, 2011, this Court appointed John Cotter, Esq. to represent the Appellant for his appeal. On May 16, 2014, Mr. Cotter, on behalf of the Appellant, filed a Statement of Errors Complained of on Appeal, listing five appellate issues. No relief is due.

## Discussion

**A. Appellant's first error complained of on appeal is: "The trial court erred in trying the Appellant in absentia. The Appellant did not voluntarily absent himself from trial. The Appellant was not absent without cause from his trial."**

This Court did not err in trying the Appellant in absentia due to the fact that the Appellant was voluntarily absent without cause from his trial. Rule 602 of the Pennsylvania Rules of Criminal Procedure provides that "the Appellant's absence without cause at the time scheduled for the start of

2

trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence." Pa. R. Crim. P 602. Furthermore, the Supreme Court of Pennsylvania has held that "when a defendant is absent without cause at the time his trial is scheduled to begin, he may be tried in absentia." Com. v. Sullens, 533 Pa. 99, 104 (1992).

With the exception of situations in which the defendant is prevented from attending the proceedings for reasons beyond his or her control, the defendant is expected to be present at all stages of trial. Com. v. Wilson, 551 Pa. 593, 600 (1998). Moreover, a "defendant owes the court an affirmative duty to advise [the court] if he or she will be absent" and "if a defendant has a valid reason for failing to appear...then the defendant can alert the court personally or through counsel of the problem." Id. In the case of Comm. v. Wilson, the Supreme Court of Pennsylvania upheld a lower court's decision to try a defendant in absentia when there was proof that the defendant knew the date and time of the trial, and the defendant had attended court proceedings leading up to the commencement of the trial. Id. The court found those two facts to be sufficient to show that the defendant voluntarily absented himself from trial. Id.

3

The Appellant was a fugitive for approximately twenty-two (22) months and failed to give any credible reason for failing to appear in court.[2] He claimed that a "fire" prevented him from showing up for court for twenty-two months; however, this Court found this to be ridiculous. When the Court asked the Appellant for details regarding the fire, the Appellant was unable to identify when the fire took place or even give a location of where the supposed fire took place. The Appellant went on further to bizarrely blame his lack of attendance on the authorities for failing to find him while he was a fugitive! N.T. 02/04/2014 pg. 9-12. Additionally, the Appellant was aware of his trial date and time, and the Appellant had attended previously scheduled court proceedings.[3] Furthermore, the Appellant argued he was unable to attend his court dates because he was caring for his child, as if this served as an excuse for missing court appearances. Appellant also has an outstanding warrant in Monmouth County, New Jersey for failure to pay court ordered child support.

This Court found the Appellant's continual failure to appear, his knowledge of various trial dates, and his lack of credible explanation for his absences showed that he voluntarily

---

[2] The defendant failed to appear to twelve court dates from April 2012 through January 2014.
[3] The defendant was present in court for arraignment on June 1, 2011, and scheduling conferences on June 30, 2011, July 25, 2011, and September 20, 2011..

absented himself without cause from his trial. Therefore, this Court did not err in trying the Appellant *in absentia*.

**B. Appellant's second error complained of on appeal is: "The Appellant was denied both his Federal and State Constitutional Rights to be present at his trial. See Pa. Const Art 1 sec.9, 6th Amendment U.S. Constitution."**

Neither the United States Constitution nor the Pennsylvania Constitution prohibits this Court from trying the Appellant in absentia. Although a defendant has an absolute right under both the 6th Amendment of the U.S. Constitution and Art. I, sec. 9 of the Pennsylvania Constitution to be present at trial, this right can be waived implicitly or explicitly by a defendant's own actions. Com. v. Hill, 737 A.2d 255, 261 (Pa. Super. Ct. 1999). A defendant's repeated absence without cause constitutes a voluntary waiver of this right, and trying such a defendant *in absentia* does not offend the defendant's constitutional rights. *Id.*, at 261.

A defendant should not be allowed to avert an unfavorable judgment by simply absconding from trial, "otherwise there could be no conviction of any defendant unless he wished to be present at the time the verdict is rendered." Diaz v. United States, 223 U.S. 442, 223 (1912) (quoting Barton v. State, 67 Ga. 653). As a result, the Supreme Court has long held that:

5

'where the offense is not capital and the accused is not in custody, the prevailing rule has been that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present and leaves the court free to proceed with the trial in like manner and with like effect as if he were present.'

*Id.*, at 455.

The Supreme Court's decision in <u>Diaz v. United States</u> was at one point limited to those situations where the defendant voluntarily absented himself from trial after having appeared for the commencement of the trial proceedings. However, since the Court's decision in <u>Diaz</u>, Pennsylvania courts have interpreted the Court's holding to include defendants who fail to appear without cause regardless of whether or not they were present at the beginning of trial. See <u>Com. v. King</u>, 695 A.2d 412 (Pa. Super. Ct. 1997) (The court properly tried the defendant *in absentia* when the defendant was absent without cause at the time his trial began. The defendant was fully aware of his trial date and had appeared in court for his arraignment, preliminary hearing and scheduling conferences.) See <u>Com. v. Hill</u>, 737 A.2d 255, 261 (Pa. Super. Ct. 1999) (The defendant was not present during pretrial proceedings, the Commonwealth attempted to locate him unsuccessfully, and he never provided an explanation for his continued absence. The

6

court properly tried the defendant *in absentia* for being voluntarily absent without cause.)

The Appellant voluntarily absented himself without cause. As a result, this Court's decision to try the Appellant *in absentia* did not violate the Appellant's right to be present at trial.

**C. Appellant's third error complained of on appeal is: "The evidence was insufficient to establish that the Defendant was the perpetrator of the offenses of Criminal Conspiracy to distribute controlled substances and possession with intent to distribute controlled substance. The evidence was insufficient to find that the Defendant possessed a controlled substance or that the Defendant possessed a controlled substance with intent to distribute. The evidence was insufficient to find that the defendant was involved in an agreement to distribute a controlled substance."**

The evidence at trial was more than sufficient to convict Appellant of criminal conspiracy to distribute controlled substances and of possession with intent to deliver controlled substances, beyond a reasonable doubt, and no relief is due.

In reviewing a claim regarding the sufficiency of the evidence, an appellate court views all the evidence admitted at trial in the light most favorable to the verdict winner and must determine whether the evidence was sufficient to allow the fact-finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Jones, 874 A.2d 108, 120-21 (Pa. Super. 2005)(citations omitted). A reviewing court must also draw all

7

reasonable inferences from the evidence in the light most favorable to the verdict winner. Commonwealth v. LaCava, 666 A.2d 221, 226 (Pa. 1995)(citation omitted).

To sustain Appellant's convictions, the Commonwealth must prove, beyond a reasonable doubt, that he possessed a controlled substance with the intent to deliver it (35 P.S. § 780-113(a)(30)),and that he, with the intent of promoting or facilitating the commission of a crime, "agreed with another person or persons that they or one or more of them would engage in conduct which would constitute such crime . . . and such other person committed an overt act in pursuance of such agreement." (18 Pa.C.S. § 903).

Here, the evidence clearly demonstrates that the Appellant was part of an illicit drug dealing scheme with Mr. Shaheeed Hall.

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession . . . ." Jones, supra at 121 (citing Commonwealth v. Haskins, 677 A.2d 328, 330 (Pa.Super. 1996), appeal denied, 692 A.2d 563 (Pa. 1997)). "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." Commonwealth v. Kirkland, 831 A.2d 607, 610 (Pa.Super. 2003). "The intent to exercise

conscious dominion can be inferred from the totality of the circumstances." Id.

However, constructive possession is irrelevant where the defendant is convicted of a conspiracy with the person in possession of the illegal drugs. Commonwealth v. Holt, 711 A.2d 1011, 1017 (Pa.Super. 1998)("In other words, when the appellant was convicted of conspiracy to possess with intent to deliver the drugs . . . he is also culpable for the crime itself, that is possession with intent to deliver cocaine."); accord Commonwealth v. Perez, 931 A.2d 703, 709 (Pa.Super. 2007). Further, each member of a conspiracy is liable for the acts of his co-conspirators committed in furtherance of their criminal activity. Commonwealth v. Geiger, 944 A.2d 85, 91 (Pa.Super. 2008). It follows that because "the criminal intent necessary to establish accomplice liability is identical to the criminal intent necessary to establish conspiracy," a co-conspiracy can be found guilty of possessing a controlled substance with intent to deliver even without having any direct contact with the illegal drugs. Commonwealth v. Hennigan, 753 A.2d 245, 254 (Pa.Super. 2000). Here, Appellant and Mr. Hall can be charged with each other's respective offenses.

To establish possession of a controlled substance with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled

substance and intended to deliver it. <u>Kirkland</u>, at 611 (citing <u>Commonwealth v. Conaway</u>, 791 A.2d 359 (Pa.Super. 2002). The trier of fact may infer intent from the facts and circumstances of the case, such as the packaging, quantity of the drugs possessed, form of the drug, the behavior of the offender, and lack of paraphernalia for consumption. <u>Jones</u>, at 121 (citations omitted). Here, Appellant was arrested after being observed as serving as a lookout for Mr. Hall's drug transactions and was found having three packets of crack cocaine on his person.

To sustain the Appellant's conviction for criminal conspiracy, the Commonwealth must establish that the Appellant: (1) entered into an agreement with another to commit or aid in an unlawful act, (2) shared criminal intent, and (3) an overt act was performed in furtherance of the conspiracy. <u>Jones</u>, at 121 (citing <u>Commonwealth v. Murphy</u>, 795 A.2d 1025 (Pa.Super. 2002). The conspiracy may be proved by circumstantial evidence. <u>Jones</u>, at 121. The conduct of the parties and the surrounding circumstances of their conduct can create a web of evidence that links the accused to the alleged conspiracy beyond a reasonable doubt. <u>Id</u>. (citations omitted). A conspiracy can be inferred from the surrounding circumstances, including, but not limited to: "(1) an association between alleged conspirators; (2) the knowledge of the commission of crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the

10

object of the conspiracy." <u>Commonwealth v. McKeever</u>, 689 A.2d 272, 274 (Pa.Super. 1997).

On February 26, 2011, at approximately 6:40 p.m., Officer Barry Stewart, part of the 16th District Narcotics Enforcement Team ("NETS"), was conducting a confidential surveillance for illegal sales of narcotics in the area of the 3900 block of West Reno Street in Philadelphia. (N.T. 12/6/13 pg. 50-51). Officer Stewart has been a Philadelphia police officer for over 19 years and over 15 years in the NETS team. <u>Id.</u> at pg. 48, 50. He has specific training in narcotics and has taken part in over 300 to 400 narcotics investigations. <u>Id.</u> at pg. 49-48.

On February 26, Officer Stewart observed Donnie Rudolph and Mr. Shaheed Hall standing together on the west end of the 3900 block of Reno Street. After ten minutes of surveillance, Officer Stewart observed a group of unknown black females, males, and a white female begin to gather on the corner into a group consisting of ten or more. <u>Id.</u> at pg. 53-54. Upon noticing the group, Appellant and Mr. Hall made a motion with their hands, wave-like, and the group followed them up the street into a vacant lot. <u>Id.</u> at pg. 54. Mr. Hall proceeded to step into the lot with the group while Mr. Rudolph stood right outside of the opening and began looking up and down the street, left and right. <u>Id.</u>

11

Officer Stewart then noticed Mr. Hall begin to perform hand-to-hand motions with the individuals, receiving United States currency from the individuals while providing them with unknown small objects. Id. at 54-55. Officer Stewart stated that Mr. Hall's hand-to-hand motions consisted of him holding something in a bawled up fist and each individual would then catch it. Id. at 55. Officer Stewart stated that upon receiving the object from Mr. Hall the individuals would immediately leave the lot. Id. at 56.

While Mr. Hall was exchanging items with these individuals, Mr. Rudolph was standing in front of the lot in the middle and looking up and down the street. Id. at 57. After the individuals dispersed, Mr. Hall came out of the lot and stood next to Mr. Rudolph. Id. at 59. They eventually left the lot together, walking westbound on Reno Street. Mr. Stewart testified that he felt Mr. Rudolph was serving as a lookout for Mr. Hall while he sold drugs. Id. at 59. Officer Stewart, based on these facts and circumstances and his own training and experience, believed that Hall and Rudolph were involved in a drug-dealing scheme. Id. at 91.

As the buyers dispersed from the lot, Officer Stewart relayed their descriptions to his backup officers over his police radio. Id. at 59-60. Officer Stewart instructed his

12

backup officers to arrest these individuals along with Hall and the Appellant. Id.

One of officer Stewart's backup officer, Officer Chitra Sethuraman, a 14-year veteran with 8 years as part of the NETS team, was directed to stop and conduct a narcotics investigation on a white female who was wearing a long black leather coat. *Id.* at 107-08. Officer Sethuraman approached the suspect and identified himself as a police officer. Id. at 108-110. After doing so he immediately observed her discard a small item from her left hand. Id. at 108-110. As he got closer he noticed it was a small blue tinted Ziploc packet containing a chunky off-white powdery substance. Id. at 108. Officer Sethuraman retrieved the package and placed the white female, later identified as Ms. Cynthia Steel, under arrest for narcotics violations. Id.

At trial, Officer Sethuraman was provided Commonwealth Exhibit-7, a Philadelphia property receipt number 2949957 and a blue Ziploc packet containing an off-white chunky substance. Id. at 110. Officer Sethuraman testified that the crack cocaine in the blue packet was a fair and accurate representation of the crack cocaine that Ms. Steel discarded on the ground. *Id.* at 110-11. Officer Sethurman also testified that in his experience as a narcotics officer drug purchasers typically leave the

13

location of the transaction immediately after it takes place. *Id.* at 111.

Another backup officer, Justin Falcone, was instructed by Officer Stewart to apprehend a woman wearing an orange jacket and blue jeans and recently left the vacant lot following a meeting with Mr. Hall. Id. at 118. The woman, later identified as Diane Gilchrist, was stopped by Officer Falcone on 40th and Parrish Street. Id. Officer Falcone recovered one blue Ziploc packet with crack cocaine inside from Ms. Gilchrist's left jacket pocket. Id. at 118-19. The packet was identified at trial by Officer Falcone and he stated that it was a fair and accurate representation of the packet he recovered off of Diane Gilchrist. Id. at 120-21. The crack cocaine was not included at the trial presentation, but residue remained in the packet. *Id.*

Officer Falcone is also part of the NETS unit and has worked 150 to 200 narcotic surveillances, 90% of them in a backup capacity. Id. at 123. His role in these investigations as a backup is to arrest drug addicts and drug dealers. Id. at 124. Officer Falcone testified that drug purchasers do not typically hang out with their dealers after the transaction is consummated. Id.

Shaheed Hall was arrested by Officer Patrick DiDomenico on February 26, 2011, at approximately 7 p.m. Officer DiDomenico was part of the NETS team and working in his backup role to

14

Officer Stewart. Id. at 126-28. Officer DiDomenico arrested Mr. Hall based on the location and direction of travel provided by Officer Stewart. Id. at 128-29. Officer DiDomenico testified that when he arrested Mr. Hall he recovered, from Mr. Hall's mouth, three blue-tinted packets. Id. at 129. Inside these packets was an off-white chunky substance, consistent with crack cocaine. Id. Officer DiDomenico also recovered $377 in U.S. currency from Mr. Hall. Id. After searching Mr. Hall, Officer DiDomenico returned to the lot on the 3900 block of Reno Street and found an additional blue packet that matched the packets recovered from Mr. Hall's mouth. Id. at 130-31. At trial Officer DiDomenico was presented the property receipts for the three packets seized from Mr. Hall's mouth, the $377, and the additional blue bag that he found in the vacant lot. Id. at 130-32. Officer DiDomenico testified that these were the items recovered from Mr. Hall. Id. at 131-32.

Officer DiDomenico went on to testify that usually buyers and sellers go their separate ways after a transaction. Id. at 132-33. He stated that this is because sellers don't like to be amongst the buyers and buyers like to go someplace quickly to use their drugs. Id. at 133.

The Commonwealth also called police officer Raymond Kirk. Officer Kirk was part of the NETS team and was working the aforementioned investigation as a backup to Officer Stewart.

15

Id. at 137-139. Officer Kirk was the arresting officer of Appellant. Id. at 139. Officer Kirk recovered three blue tinted Ziplocs that contained an off-white chunk substance, alleged crack cocaine, from Appellant's left jacket pocket. Id. Appellant was not with Mr. Hall when he was arrested, Mr. Hall was about a half a block away. Id. Officer Kirk was presented the property receipt at trial the three Ziploc packets containing an off-white chunky substance of alleged crack cocaine. Id. at 141. Officer Kirk identified the packets as those recovered from Appellant at his arrest.

Officer Kirk also testified that drug buyers do not typically congregate with their dealers after a transaction. Id. at 144-45. Typically they usually complete their purchase and then go use their drugs. Id. at 145.

Viewing all of the evidence presented at trial and drawing all inferences from such evidence in the light most favorable to the Commonwealth, the verdict winner, it is clear that the evidence was sufficient for the jury to find that the Appellant's convictions must be upheld.

Appellant was arrested with crack cocaine on his person and his associate, Mr. Hall, was also apprehended with packets of the drug as well as $377 in cash. Further, Appellant was observed by NETS officers as serving as a look-out for Mr. Hall while he engaged in drug transactions.

16

Two of these buyers, Ms. Steel and Ms. Gilchrist, were arrested and found to have packets of crack-cocaine that matched the packets found on Appellant and Mr. Hall.

Viewing this evidence and drawing all reasonable inferences from the evidence in the light most favorable to the Commonwealth, the jury verdict winner, it is clear that there is sufficient evidence to establish that Appellant was part of a drug-dealing conspiracy with Mr. Hall and his convictions for possession with intent to distribute a controlled substance and conspiracy to deliver a controlled substance.

**D. Appellant's fourth error complained of on appeal is: "The trial court abused its discretion in the sentence it imposed and the sentence was unreasonable. The trial court did not take into consideration all the factors required by 42 Pa.CSA sec. 9721(b). The trial court did not take into consideration the defendant's age family history and rehabilitative needs in imposing the sentence. The trial court also ran the sentences consecutively which also was unreasonable. The sentence was outside the aggravated range of the sentence guidelines."**

This Court did not abuse its discretion in the sentence imposed, nor did it violate the sentencing requirements of 42 Pa.C.S. 9721(b) of the Sentencing Code by failing to consider the Appellant's rehabilitative needs or mitigating circumstances. To the contrary, this Court did consider the Appellant's rehabilitative needs, mitigating circumstances, as well as aggravating factors such as the potential danger the Appellant poses to society. In crafting the Appellant's

17

sentence, this Court struck a balance between the Appellant's potential for rehabilitation and the Court's duty to protect the public.

Allowance of an appeal of a sentence is only permitted when the appellate court determines that there is a substantial question in regard to the appropriateness of the sentence. Commonwealth v. Boyer, 856 A.2d 149, 151-52 (Pa. Super 2004). This determination is made on a case-by-case basis and is made in conjunction with what is laid out in the Sentencing Code. Id. In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. 42 Pa.C.S.A. § 9721(b)

This Court did address aggravating factors at the sentencing hearing justifying an above guideline sentence. These factors include: Appellant's thirteen (13) arrests and seven (7) convictions; being a multi-state offender and having warrants in three (3) states, including one in New Jersey for failing to pay child support, despite the Appellant's contention that supporting his daughter was one of his reasons for not showing up to court; his habit of being a chronic absconder

18

evidenced by twelve failures to appear for this case; his lying to the Court during sentencing regarding alleged excuses why he did not show up for his trial; and his lack of remorse and failure to accept responsibility. In addition, being a fugitive on this case for twenty-two (22) months is an aggravating factor.

Also, this Court was equipped with a current Presentence Investigation Report (PSI).[4] The evaluative summary of the Appellant in the PSI indicates the Appellant "is a threat to the community wherever he resides. He has incurred arrests and convictions in four different states, and he currently has warrants issued by three different states. He does not appear to be amenable to community supervision as he fails to appear for court indicating his disregard for the judicial order and authority." Presentence Investigation Report, pg. 2. Based on these aggravating factors, the Court properly sentenced the Appellant.

_____

[4] See Commonwealth v. Devers, 519 Pa. 88, 101-102 (Pa. 1988)("Where presentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand").

This Court did regard the Appellant's age, family history, and rehabilitative needs when it imposed its sentence. These factors and others were addressed at the sentencing hearing on February 4, 2014. They were more than counter balanced by the numerous aggravating factors cited. The Court found that the Appellant lacked almost any rehabilitative potential. This Court did consider all factors the Appellant claims were overlooked.

Imposition of consecutive sentences is a choice left completely up to the discretion of the trial court and does not in and of itself give rise to the level of a substantial question. Commonwealth v. Boyer, 856 A.2d 149, 153 (Pa. Super 2004). This Court did just that. It followed the guidelines and chose to impose consecutive legal sentences based upon the evidence presented at trial and the Appellant's history. No substantial question has been raised at any point in the present case. The sentence imposed was lawful and within this Court's power and discretion and should be affirmed.

Therefore, this Court did not abuse its discretion in sentencing the Appellant. This Court's sentence is not excessive, unreasonable, unsupported by the Appellant's character, nor did it fail to consider Appellant's rehabilitative needs or mitigating circumstances. This Court determined that the Appellant's criminal history, its duty to protect the public, and the scant rehabilitative potential of

20

the Appellant called for the sentences imposed. The Appellant showed no remorse about his crimes, nor did he ever admit responsibility. There is no substantial question regarding the appropriateness of these sentences as the requirements of the Sentencing Code were followed. See 42 Pa. C.S. §9721.[5]

**E. Appellant's fifth error complained of on appeal is: "The defendant was denied his right to a prompt and speedy trial under Rule 600(G)."**

The Appellant was not denied his prompt and speedy trial rights under Rule 600 because he waived these rights by voluntarily absenting himself from trial. "Rule 600 requires a defendant to file a written motion to dismiss, and that, by failing to appear in court on the day his or her case is listed for trial, a defendant waives his or her Rule 600 claim." Com. v. Brock, 619 Pa. 278, 61 A.3d 1015, 1016 (2013).

---

[5] Under "42 Pa.C.S. §9721(b) General standards. --In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. … "

See Commonwealth v. McAfee, 849 A.2d 270 (Pa.Super. 2004), appeal denied, 580 Pa. 695, 860 A.2d 122 (2004)("the trial court was correct in determining that a sentence of total confinement was necessary to vindicate the authority of the court because [a]ppellant had demonstrated a complete lack of willingness to comply with the multiple court orders entered in this case. We find no abuse of discretion in sentencing"); Commonwealth v. Sierra, 752 A.2d 910, 911 (Pa. Super. 2000) (sentence affirmed where parole and probation revoked and appellant sentenced to statutory maximum for technical violations); Commonwealth v. Crump, 995 A.2d 1280, 1283 (Pa.Super. 2010)(where "court considered the testimony at the VOP hearing regarding [a]ppellant's lack of success under probation, arrest while under supervision, failure to appear on numerous occasions, and flight from a halfway house while under parole supervision", "the record as a whole reflects that the trial court considered the facts of the crime and character of [a]ppellant in making its determination, [and appellate court] cannot re-weigh the sentencing factors to achieve a different result").

21

On September 20, 2011, the Appellant rejected a smart room offer, and the case was given the earliest possible date for trial. On April 12, 2012, this Court issued a bench warrant because the Appellant failed to appear for trial. On December 9, 2013, this Court began an in absentia jury trial as the Appellant persisted in failing to appear for listed court dates. The Appellant remained a fugitive for twenty-two months until authorities finally arrested him. Therefore, because the Appellant voluntarily absented himself from trial, his claims for relief under Rule 600 fail.

## Conclusion

For all of the above reasons, the claims Appellant raises on appeal should provide no relief. Appellant's sentences should, therefore, stand.

BY THE COURT:

CHRIS R. WOGAN,
    J.

23